**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 23-CV-01580-REB (Bankr. No. 16-13817 TBM, Chapter 7)

In re:

FOG CAP RETAIL INVESTORS LLC,

    Debtor.

SUMMIT INVESTMENT MANAGEMENT LLC,
SBN FCCG, LLC, and
SBN EDGE, LLC,

    Appellants,

v.

TOM CONNOLLY, Chapter 7 Trustee,
FOOT LOCKER RETAIL, INC., and
STRATFORD HOLDING, LLC,

    Appellees.

## ORDER GRANTING MOTION TO DISMISS

**Blackburn, J.**

    This matter is before me on the **Motion To Dismiss Appeal for Lack of Jurisdiction** [#6][1] filed August 1, 2023. The appellants filed a response [#11], the appellees filed a reply [#12], and appellants filed a supplement [#14] to their response. I grant the motion.

    This case concerns the appeal of an order of the bankruptcy court denying a

---

[1] "[#6]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

motion by Tom Connolly, the Chapter 7 trustee (Trustee), to approve a stipulation between the Trustee and the three appellants. The stipulation, if approved, would have resolved certain objections of the appellants in the bankruptcy case and concluded the involvement of the appellants in the bankruptcy case. The bankruptcy court did not enter judgment on its order denying approval of the stipulation.

In the motion to dismiss [#6], two of the appellees, Stratford Holding, LLC (Stratford) and Foot Locker Retail, Inc. (Foot Locker), contend this appeal must be dismissed for lack of jurisdiction. Stratford and Foot Locker contend the order of the bankruptcy court is not a final, appealable order and is not an appealable interlocutory order. One of those two things is a requisite for jurisdiction under 28 U.S.C. § 158(a). In addition, the appellees argue the appellants lack standing to appeal an order denying approval of the stipulation. On each of these points, the appellants disagree.

## I. STANDARD OF REVIEW

Under 28 U.S.C. § 158,

(a) The district courts of the United States shall have jurisdiction to hear appeals

(1) from final judgments, orders, and decrees;

(2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and

(3) with leave of the court, from other interlocutory orders and decrees;

of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

The first and third of these provisions are at issue here. The standards of review applicable to § 158(a)(1) and (3) are discussed below.

2

## II.  BACKGROUND

Appellee, Stratford Holding, LLC, owns commercial real estate in Warr Acres, Oklahoma (the Oklahoma property).  The property was subject to a 30 year lease agreement with Kinney Shoe Corporation (Kinney) as the lessee.  Later, Kinney changed its name to Foot Locker Retail, Inc. (Foot Locker).  Foot Locker is an appellee in this case.  From 1977 to 1995, Foot Locker conducted a shoe store operation at the Oklahoma Property.  Then, Foot Locker subleased the Oklahoma Property to an entity which operated a dry-cleaning business at the property.

On September 25, 2002, Foot Locker sold and assigned all of its interests in the Foot Locker lease of the Oklahoma Property to the debtor, Fog Cap Retail Investors, LLC (Fog Cap).  Fog Cap assumed and agreed to be fully bound by all terms of the Foot Locker lease.  In 2002, Fog Cap was owned by Fog Cutter Capital Group, Inc. (Fog Cutter).  In 2008, Fog Cutter sold 100% of the membership interests in Fog Cap to SBN FCCG, LLC, an appellant here.

Dry-cleaning business operations continued at the Oklahoma Property until August 2008.  Then, Fog Cap evicted the extant dry-cleaner subtenant.  The property lay dormant at least until 2012.  In February 2012, Fog Cap surrendered to Stratford its leasehold interest in the Oklahoma Property.  Then, both the Oklahoma Department of Environmental Quality (ODEQ) and consultants hired by Stratford conducted investigations to determine if the Oklahoma Property was contaminated with dry cleaning chemicals.  Both investigations showed the soil and the groundwater at the Oklahoma Properly were contaminated with PCE.

In July 2012, Stratford filed a lawsuit against Foot Locker, Fog Cap, and others in the United States District Court for the Western District of Oklahoma (case number 12-

cv-00772-HE). Stratford also entered into a Consent Order with the ODEQ to remediate the Oklahoma Property. The Elaine K. Hall Revocable Trust (Hall Trust) owns real property adjacent to the Oklahoma Property. In March 2015, the Hall Trust filed a lawsuit against Fog Cap, Fog Cutter, Stratford, and Foot Locker, as well as appellants SBN FCCG and Summit Investment Management, LLC. That case was also filed in the United States District Court for the Western District of Oklahoma. In that case, the Hall Trust alleges PCE from the Oklahoma Property has migrated to the groundwater under the neighboring Hall Trust Property. The cases filed by Stratford and the Hall Trust were consolidated and remain pending.[2]

As a result of the Oklahoma Litigation, Fog Cap filed its voluntary Chapter 11 petition on April 20, 2016, initiating the underlying bankruptcy case, Bankr. No. 16-13817-TBM. In January of 2017, the bankruptcy court granted relief from stay to permit Stratford, Foot Locker, the Hall Trust, and the appellants to liquidate any and all claims and counterclaims, including claims against the Fog Cap bankruptcy estate, in the Oklahoma Litigation. On April 25, 2017, the Fog Cap bankruptcy was converted from Chapter 11 to Chapter 7. Tom Connolly was appointed as the Chapter 7 Trustee. More litigation ensued. Ultimately, the Trustee reached settlements with a variety of creditors and others, which settlements were approved by the bankruptcy court.

The Trustee and the Summit Parties reached a settlement agreement (Summit Stipulation) which: (1) effectively resolved the objection of the Summit Parties to a settlement of certain issues with the Hall Trust; (2) concluded the involvement of the Summit Parties in the bankruptcy case; and (3) resolved an appeal taken by the

---

[2] I will refer to these consolidated cases as the Oklahoma Litigation.

4

Summit Parties which then was pending in the district court.³ On March 15, 2022, the Trustee filed a motion to approve the Summit Stipulation. ROA [#5], Vol. 1, pp. 341-347. Stratford and Foot Locker filed objections to the motion. ROA [#5], Vol 1, pp. 486-558. On March 31, 2022, the Trustee filed a notice of withdrawal of the motion to approve the Summit Stipulation. ROA [#5], pp. 360-362. There, the Trustee said the Summit Stipulation "may result in unintended consequences" in the Oklahoma Litigation. *Id*., p. 360. The bankruptcy court conducted a trial to hear evidence and argument on the question of whether or not the Summit Stipulation should be approved.

On June 7, 2023, the bankruptcy court delivered its oral ruling denying the motion of the Trustee to approve the Summit Stipulation. ROA [#5], Vol 1, p. 899 (Minutes); *Reply* [#12], Exhibit A [#12-1] (Bankruptcy Court Ruling). However, the bankruptcy court did not enter judgment based on that order.

In its order, the bankruptcy court applied the quadripartite analysis of ***Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson***, 390 U.S. 414, 424 (1968) and subsequent Tenth Circuit cases. *Bankruptcy Court Ruling* [#12-1], pp. 40-44. The overall goal of the **TMT Trailer Ferry** analysis, the bankruptcy court observed, is to determine if the proposed settlement is fair, equitable, and in the best interest of the bankruptcy estate. *Id*., p. 41. The bankruptcy court observed a wide variety of problems present in the proposed Summit Stipulation. Given those problems, the court concluded that the Summit Stipulation was not fair, equitable, and in the best interest of the estate. *Id*., pp. 84-85. The court declined to give deference to the judgment of the Trustee on the Summit Stipulation because the

---

³ The terms of this agreement are outlined on pages 5-6 of the response [#11].

5

positions taken by the Trustee concerning the stipulation had varied from support to neutral to not supportive.  *Id*., pp. 44-46, 56, 84.  On June 20, 2023, the Summit Parties filed a notice of appeal concerning the order of the bankruptcy court.

### III.  ANALYSIS

#### A.  Final Appealable Order

> Traditionally, a decision in a civil controversy is not considered "final" unless it terminates the litigation on the merits and leaves nothing for the court to do but execute the judgment.  In the bankruptcy realm, however, the concept of finality has been given a less restrictive meaning.  Unlike most civil cases, bankruptcy proceedings often involve an aggregation of controversies, many of which would constitute individual lawsuits had a bankruptcy petition never been filed.  In such proceedings, therefore, we separately consider the finality of each discrete dispute raised within the larger bankruptcy case. In other words, we have recognized that the appropriate "judicial unit"  for purposes of determining finality under 28 U.S.C. § 158(d)(1) is not the overall bankruptcy case; it is instead the particular adversary proceeding or discrete controversy pursued within the broader framework cast by the petition.

***In re Baines***, 528 F.3d 806, 809–10 (10th Cir. 2008) (citations and internal quotations omitted).  An order approving a settlement or compromise under Bankruptcy Rule 9019 is "final within the meaning of 28 U.S.C. § 158(a) because it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" ***Korngold v. Loyd*** (***In re S. Med. Arts Cos***.), 343 B.R. 250, 254 (B.A.P. 10th Cir. 2006) (citation omitted). Here, the question is whether the order of the bankruptcy court declining approval of a settlement is a final order.

The appellants appeal from an order of the bankruptcy court denying approval of the Summit Stipulation, which was an attempted settlement or compromise.  Stratford and Foot Locker contend the order denying approval is not a final order because it does not end the litigation or resolve the issues underlying the order.  Rather, Stratford and Foot Locker assert, the order denying approval left the parties free to negotiate a new

6

settlement with the Summit Parties and/or to litigate or otherwise resolve the Summit Parties objection to a proposed settlement with the Hall Trust. Further, they note, the order did not alter the status of the parties nor determine their property rights.

The Summit Parties contend the key material terms of the proposed Summit Stipulation were (1) for the bankruptcy estate to agree it possessed no claims against the Summit Parties and, if it did possess claims, to release those claims; and (2) to transfer the claims of the bankruptcy estate against Fog Cutter to the Summit Parties. *Response* [#11], p. 8. Without these two key material provisions in a stipulation, the Summit Parties say, they have no reason to enter into any stipulation with the Trustee. *Id*., p. 9. There is no possibility of another stipulation, the Summit Parties argue, because these key material provisions would not be approved by the bankruptcy court.

One of the many reasons cited by the bankruptcy court in support of its decision not to approve the Summit Stipulation was problems created by certain terms in first of these two provisions. *Bankruptcy Court Ruling* [#12-1], pp. 35, 49-50, 79-84. The court noted that this provision in the Summit Stipulation did not contain "the type of prophylactic language that was present in all the other various settlement agreements and stipulations approved by the Court." *Id*., p. 79. The other settlement stipulations approved by the court "all contain extensive prophylactic language ensuring neutrality with respect to the Oklahoma Litigation." *Id*. In contrast, the court concluded, "the Summit Parties consciously decided not to include such language" because "the Summit Parties actually intend to use the Second Summit Stipulation to obtain a tacit tactical advantage in the Oklahoma litigation." *Id*. That potential, but concealed, advantage was an effort by the Summit Parties to assert in the Oklahoma litigation that the release provision in the Summit Stipulation operated to release alter ego claims

7

asserted by Foot Locker and Stratford against the Summit Parties and related parties in the Oklahoma Litigation.

In short, the bankruptcy court did not object to an agreement by the bankruptcy estate that it possessed no claims against the Summit Parties and, if it did possess claims, to release those claims. Rather, the court objected to the lack of prophylactic language in that provision to ensure neutrality with respect to the Oklahoma Litigation. This is a topic readily subject to re-negotiation and amendment of the stipulation. That is not finality.

As to the second provision cited by the Summit Parties as a key material provision, the court described that provision in its order, but expressed no objection to the provision in assessing the Summit Stipulation. *Bankruptcy Court Ruling* [#12-1], pp. 35-36. Nothing in the order of the bankruptcy court indicates it would not approve such a provision if the other problems detailed in its ruling were resolved. This too is not an indicator of finality.

The Summit Parties try to create finality by saying they "have absolutely no reason to, and will not, enter into any further settlement agreement with the bankruptcy estate." *Response* [#11], p. 9. They claim that is so because the bankruptcy court would not approve the two key material provisions on which it relies. However, the record belies these contentions; the bankruptcy court never said it disapproved of the basic terms of those two provisions.

As to the first provision, the provision releasing claims of the bankruptcy estate against the Summit Parties, the court objected to the lack of prophylactic language in that provision to ensure neutrality with respect to the Oklahoma Litigation. The court never said it disapproved of the release of those claims in the context of proper

prophylactic language. As to the second provision, in its order the court summarized the provision concerning transfer of the claims of the bankruptcy estate against Fog Cutter to the Summit Parties. The court did not state any criticism of this provision. These circumstances do not show the bankruptcy court objected to the fundamental terms of these two provisions. Once again, this does not reflect finality.

Further, most, and maybe all, of the many other objections noted by the bankruptcy court in its ruling also are readily subject to re-negotiation and amendment of the stipulation. For example, the court noted that the stipulation "contains numerous fundamental drafting errors that make it ambiguous and unclear in identifying the litigation to be settled." *Bankruptcy Court Ruling* [#12-1], pp. 60-61. The court noted that a provision concerning an appeal pending in the district court when the Summit Stipulation was written did not address subsequent appeals of that issue, which contributed to the confusion. *Id.*, p. 63.

The court also noted that the Summit Stipulation provides the Trustee will not stipulate to the entry of judgment on any claims asserted against Fog Cap in the Oklahoma Litigation. That provision ignored the fact that the Trustee already had stipulated to the entry of judgment against Fog Cap and in favor of Stratford and Foot Locker on certain claims in the Oklahoma litigation. This provision of the Summit Stipulation, the bankruptcy court said, "plainly has the potential to create unnecessary uncertainty and confusion because it is ambiguous regarding the effect" of earlier settlements in the bankruptcy case and an order of the Oklahoma federal court concerning the stipulation of the Trustee to entry of certain judgments against Fog Cap. *Bankruptcy Court Ruling* [#12-1], p. 78. All of the items noted by the bankruptcy court and summarized above are topics ripe for re-negotiation and amendment of the

stipulation. That is not finality.

The Summit Parties also contend the order is final because the Trustee said, in a statement of position on the motion to approve the Summit Stipulation, that the sole purpose of the Trustee "in entering into the Stipulation with [Summit Parties] was to permit Trustee to move forward completing his final duties in this case. If the Summit Motion were approved and not appealed, Summit's currently pending objections and appeals would be settled, and Trustee would be able to promptly file a final report and account and close this case." ROA [#5], Vol 1, p. 614 (Trustee statement of position). According to the Summit Parties, closure of the bankruptcy case would preclude review of the order denying approval of the Summit Stipulation. Because the Trustee expressed intent to seek closure of the bankruptcy case, the Summit Parties contend, the order of the bankruptcy court denying approval of the Summit Stipulation is a final order for purposes of § 158(a).

The ultimate goal of every bankruptcy trustee is to file a final report and account and close the case. The underlying bankruptcy case has been pending since 2016. The vast majority of the issues in the bankruptcy case have been resolved. The fact that the Trustee sought to resolve the few remaining issues via the Summit Stipulation does not, by itself, show that the order denying approval of the stipulation is a final order. Rather, for the reasons detailed above, the few remaining issues remain subject to negotiation and resolution, guided by the detailed analysis of the Summit Stipulation provided by the bankruptcy judge. That is not finality.

I conclude ultimately the order of the bankruptcy court is not a final order under § 158(a)(1). Thus, this court cannot exercise jurisdiction over this appeal on that basis.

## B.  Collateral Order Exception

If the order of the bankruptcy court is not a final order under § 158(a)(1), then the Summit Parties argue this court has jurisdiction over the appeal under the collateral order exception of § 158(a)(3).  With leave of the district court, a district court may hear appeals of "other interlocutory orders and decrees" of the bankruptcy court.  28 U.S.C. § 158(a)(3).

> Section 158(a)(3) provides no guidelines as to when it is appropriate for a district court or a bankruptcy appellate panel to grant leave to bring an interlocutory appeal. The majority of these reviewing courts, including this Court, have read the requirements of [28 U.S.C.] § 1292, which govern interlocutory appeals from the district court to the circuit court, into § 158(a)(3). Under  § 1292, an interlocutory appeal is appropriate when the appealed order involves a controlling question of law for which there is substantial ground for difference of opinion, and the immediate resolution of the issue will materially advance the ultimate termination of the litigation.  However, leave should be granted "with discrimination and reserved for cases of exceptional circumstances." Appellant has the burden to show that the bankruptcy court's Order meets these standards.

*In re Fox*, 241 B.R. 224, 232 (10th Cir. BAP 1999) (citations omitted).

> Section 1292(b) provides in relevant part:
>
>> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. . . .

Given the terms of § 1292(b), four conditions must be satisfied before an issue may be certified for interlocutory appeal:  (1) the action must be a civil action; (2) the court must conclude that the order involves a controlling question of law; (3) there must be substantial ground for difference of opinion as to the resolution of that question; and (4) it must appear that an immediate appeal from the order may materially advance the

11

ultimate termination of the litigation.  ***Ahrenholz v. Bd. of Trs. of the Univ. of Ill.***, 219 F.3d 674, 676 (7th Cir.2000); ***In re Grand Jury Proceedings June 1991***, 767 F.Supp. 222, 223 (D. Colo. 1991).  "These criteria are conjunctive, not disjunctive. The proponent of an interlocutory appeal bears the burden of establishing that all three of the substantive criteria are met." ***Freedom Transportation, Inc. v. Navistar International Corporation***, 2020 WL 108670, at *2 (D. Kan. 2020).

While I have discretion in determining whether to certify an order for interlocutory appeal under § 1292(b),  ***see Swint v. Chambers County Commission***, 514 U.S. 35, 47 (1995), certification should be reserved for rare and extraordinary cases.  ***State of Utah by and through Utah State Department of Health v. Kenecott Corp.***, 14 F.3d 1489, 1495 (10th Cir.), ***cert. denied***, 513 U.S. 872 (1994).

The term "controlling question of law," as used in the second factor listed above, has a particular meaning.

> The phrase "question of law" as used in 28 U.S.C. § 1292(b) does not refer to a particular application of facts to the law, but rather "has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." ***Ahrenholz v. Bd. of Trs. of the Univ. of Ill.***, 219 F.3d 674, 676 (7th Cir.2000). Such questions typically involve law that is unsettled. ***See Gillespie v. U.S. Steel Corp.***, 379 U.S. 148, 168 n. 4 (1964) (approving district court's denial of certification when the Supreme Court had previously directly addressed the law in question); 28 U.S.C. § 1292(b) (requiring there be a substantial ground for difference of opinion on the controlling question of law). Consequently, for the purposes of 28 U.S.C. § 1292(b), district courts should certify questions when they are unsure what the law is, not when there is merely a dispute as to how the law applies to the facts of a particular situation.

***Certain Underwriters at Lloyd's, London, Subscribing To Policy Number 501/NM03ACMB v. Nance***, 2006 WL 4109675, at *3 (D.N.M. 2006).

A bankruptcy proceeding is a civil proceeding. So, this case meets the first § 1292(b) criterium. However, I find and conclude that the Summit Parties have not established the second and third of the § 1292(b) criteria. As a result, I do not address the fourth criterium.

Concerning the second criterium, the issues presented by the Summit Parties do not concern a controlling question of law, meaning a question about the meaning of a statutory or constitutional provision, regulation, or common law doctrine. Rather, the issues presented by the Summit Parties concern the propriety of the exercise of discretion by the bankruptcy court in declining the approve the Summit Stipulation. Those issues concern a particular application of facts to the well established legal criteria for approval or disapproval of a settlement in bankruptcy. Those issues do not constitute a controlling question of law as that term is used in the § 1292(b) criteria.

Concerning the third § 1292(b) criterium, the Summit Parties have not shown there is a substantial ground for difference of opinion as to the resolution of the issues they raise in their notice of appeal. The order of the bankruptcy court entails a detailed and comprehensive analysis of the Summit Stipulation under the *TMT Trailer Ferry* factors. *Bankruptcy Court Ruling* [#12-1]. The bankruptcy court identified and clearly described various problems present in the Summit Stipulation. The bankruptcy court clearly described how those problems were likely to foment additional litigation in the Oklahoma Litigation and possibly in the bankruptcy court. Applying the *TMT Trailer Ferry* factors to the facts, the bankruptcy court reached the essentially ineluctable conclusion that the Summit Stipulation did not satisfy the *TMT Trailer Ferry* factors, is not fair, equitable, and in the best interest of the bankruptcy estate. Thus, the bankruptcy court concluded the Summit Stipulation could not be approved by the

bankruptcy court. The Summit Parties have not shown there are substantial grounds for a differences of opinion on the issues they raise in their appeal.

The order of the bankruptcy court is not an appealable collateral order under § 158(a)(3). Thus, this court cannot exercise jurisdiction over this appeal on that basis.

### IV.  CONCLUSION & ORDERS

The order of the bankruptcy court is not a final order under § 158(a)(1) and is not an appealable collateral order under § 158(a)(3). Thus, this court cannot exercise jurisdiction over this appeal on either of those two bases. This appeal must be dismissed for lack of jurisdiction.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Motion To Dismiss Appeal for Lack of Jurisdiction** [#6] is granted;

2. That under 28 U.S.C. § 158(a), this appeal is dismissed for lack of jurisdiction;

3. That judgment shall enter dismissing this appeal for lack of jurisdiction; and

4. That this case is closed.

Dated September 18, 2024, at Denver, Colorado.

BY THE COURT:

Bob Blackburn
Robert E. Blackburn
United States District Judge